UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MONUMENTAL TASK                    CIVIL ACTION
COMMITTEE, INC., ET AL.

VERSUS                             NO: 15-6905

ANTHONY R. FOXX, ET AL.            SECTION: "J"(3)


## ORDER & REASONS

Before the Court are several motions. First, Plaintiffs filed a *Motion to Continue*[1] and a supplemental memorandum in support thereof.[2] Federal Defendants[3] and the City[4] filed oppositions thereto. Second, the City filed a *Motion for Summary Judgment*,[5] and Plaintiffs filed an opposition[6] thereto. Third, Federal Defendants filed a *Motion to Dismiss for Lack of Subject Matter Jurisdiction and Summary Judgment*,[7] and Plaintiffs filed an

---

[1] R. Doc. 67.
[2] R. Doc. 86. Plaintiffs filed their original *Motion to Continue*, R. Doc. 67, on February 22, 2016. On March 24, 2016, the Court ordered Plaintiffs to supplement their motion and clarify exactly how additional discovery would create a genuine issue of fact. *See* R. Doc. 85.
[3] The United States Department of Transportation ("DOT"), the Federal Transit Administration ("FTA"), and their official capacity heads (collectively referred to as "Federal Defendants"). Federal Defendants filed an opposition to Plaintiffs' original Motion to Continue, R. Doc. 74, and Plaintiffs' Supplemental Memorandum for a Continuance, R. Doc. 87.
[4] The City of New Orleans and Mayor Mitchell J. Landrieu (collectively referred to as "the City"). The City filed an Opposition, R. Doc. 88, to Plaintiffs' original Motion to Continue.
[5] R. Doc. 63.
[6] R. Doc. 71. The City filed a reply, R. Doc. 73, Plaintiff's filed a sur-reply in opposition, R. Doc. 142, and the City filed its own sur-reply to Plaintiff's sur-reply in opposition, R. Doc. 154.
[7] R. Doc. 62.

opposition[8] thereto. Finally, the New Orleans Regional Transit Authority ("RTA") filed a *Motion for Summary Judgment*,[9] and Plaintiffs filed an opposition[10] thereto. Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that Plaintiffs' *Motion to Continue* **(R. Doc. 67)** should be **DENIED**, and the City's *Motion for Summary Judgment* **(R. Doc. 63)**, the Federal Defendants' *Motion to Dismiss for Lack of Subject Matter Jurisdiction and Summary Judgment* **(R. Doc. 62)**, and the RTA's *Motion for Summary Judgment* **(R. Doc. 64)** should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

This case arises from the New Orleans City Council's ("City Council") decision to remove three monuments honoring Confederate leaders and a fourth commemorating an 1874 battle between the White League and the City of New Orleans' first integrated police force. This litigation's procedural history is contained in the Court's previous Orders and Reasons. *See*, *e.g.*, (R. Doc. 151; R. Doc. 135; R. Doc. 58; R. Doc. 49). In short, in June of 2015, New Orleans' Mayor, Mitchell J. Landrieu, called upon the City Council to initiate the process of removing these four public monuments. After following the requisite procedures, in December of 2015, the City

---

[8] R. Doc. 70. The Federal Defendants also filed a reply to Plaintiffs' opposition. R. Doc. 74.
[9] R. Doc. 64.
[10] R. Doc. 69.

Council affirmatively voted to remove the monuments, and an ordinance was signed into law. Plaintiffs then filed suit seeking a temporary injunction, preliminary injunction, and permanent injunction enjoining the City from removing and relocating the monuments. On January 26, 2016, this Court denied Plaintiffs' request for an injunction,[11] and that decision was ultimately affirmed by the Fifth Circuit on March 6, 2017. *See Monumental Task Comm., Inc. v. Chao*, No. 16-30107, --- F. App'x ---, 2017 WL 892492 (5th Cir. Mar. 6, 2017) (unpublished). On March 8, 2017, this Court granted the City's motion for summary judgment and dismissed Plaintiffs' claims as to the Liberty Place Monument. *Monumental Task Comm., Inc. v. Foxx*, No. 15-6905, 2017 WL 914056 (E.D. La. Mar. 8, 2017).

Presently before the Court are motions to dismiss Plaintiffs' remaining claims as to the General Robert E. Lee Monument, the P.G.T. Beauregard Monument, and the Jefferson Davis Monument (collectively, "the Monuments"). Defendants, in general, argue that Plaintiffs do not have a protected interest in the Monuments and cannot prevent the City from removing them. In response, Plaintiffs raise various arguments but ultimately assert that they have a protected property interest in the Monuments, and that this Court should defer ruling on the motions until discovery is

---

[11] R. Doc. 49.

completed. The motions are now before the Court on the briefs and without oral argument.

**PARTIES' ARGUMENTS**

**1. Plaintiffs' Motion to Continue**

    **a. Plaintiffs' Arguments**

Plaintiffs contend that this "Court has not permitted [them] to conduct any discovery whatsoever." Plaintiffs assert that they need additional discovery on nearly all of their claims. As to their National Historic Preservation Act ("NHPA") and Department of Transportation Act ("DOT Act") claims, they assert that "the federal defendants and the City of New Orleans have been cooperating for decades to create a single, unified, comprehensive streetcar network in New Orleans." Plaintiffs essentially argue that any work performed on any portion of any streetcar line in New Orleans is subject to review under section 4(f) of the DOT Act and section 106 of the NHPA. Thus, Plaintiffs claim that the Federal Defendants violated the DOT Act by failing to conduct a section 4(f) analysis of the effect of the totality of the streetcar network in New Orleans on the Monuments, and violated section 106 of the NHPA because they failed to conduct a section 106 review to determine whether the planning, funding, construction, and maintenance of all phases of the streetcar network in New Orleans has the potential to cause adverse effects on the Monuments. Plaintiffs contend that their "expansive

interpretation of [the NHPA and the DOT Act]" is a matter of first impression, and thus if any support for such an interpretation was found it would create a disputed material fact and tend to prove Plaintiffs' claims. Lastly, Plaintiffs contend that the Monuments have become "incorporated into the transit system" adjacent to them, and thus they should be permitted discovery "within the Department of Transportation and the Federal Transit Authority."

Plaintiffs also seek additional discovery on their Veterans Memorial Preservation and Recognition Act ("VMPRA") claim. Specifically, Plaintiffs seek to determine whether there is any evidence to indicate that the figures atop the Monuments honor a member of the United States Military. Plaintiffs argue that if any evidence exists, it would support their claim that the Monuments may not be removed.

As to their claims against the City, Plaintiffs argue that the City did not comply with § 146-611 of the New Orleans City Code when it solicited input from the Historic District Landmarks Commission ("HDLC"). Plaintiffs contend that the HDLC "did not have jurisdiction over the Lee Monument" and that the City "sought to politicize [removal of the Monuments] by frequent reference to the reasons the monuments were built and the motives of the individuals who erected them." Plaintiffs argue that they should be permitted discovery into the "motives of the individuals and associations of individuals" who erected the Monuments. Similarly,

Plaintiffs seek discovery on the reports the City Council relied upon in reaching their conclusion that the Monuments constitute a "nuisance" under § 146-611 of the New Orleans City Code.

Plaintiffs further assert that the City violated its own policy on donations by "hiding" the source of funds it will use to pay to remove the Monuments. Plaintiffs seek discovery on the source of the funds that will be used to remove the Monuments and whether such funds are federal in nature.

Plaintiffs seek additional discovery on whether they have a property interest in the Monuments. Plaintiffs contend that they have a property interest through the Louisiana doctrine of negotiorum gestio. Further, they seek discovery on whether any other individual or organization owns or possesses a property interest in the Monuments.

Finally, Plaintiffs seek additional discovery on their equal protection claim. In particular, Plaintiffs seek to further investigate whether "the City of New Orleans treated one group of citizens (those who called for removal of the Lee, Davis, Beauregard and Liberty Place Monuments) differently than the City treated another group (those who called for removal of the Jackson Monument in Jackson Square)." Plaintiffs argue that "[t]here are disputed material facts as to whether the City discriminated against monuments (as it claims) or whether it discriminated against citizens, as argued by plaintiffs." Plaintiffs also argue

that they should be permitted additional discovery "regarding the evolution" Article XII, § 4 of the Louisiana Constitution. Specifically, Plaintiffs seek discovery on the legislative history Article XII, § 4 of Louisiana Constitution.

### b. Federal Defendants' and The City's Response in Opposition

The Federal Defendants and the City argue, *inter alia*, that Plaintiffs are not entitled to additional discovery pursuant to Federal Rule of Civil Procedure 56(d). Among other reasons, Defendants contend that Plaintiffs failed to explain with specificity how the requested discovery will create genuine disputes of material fact to defeat summary judgment. Defendants argue that Plaintiffs seek discovery almost exclusively on a theory of streetcar segmentation and "integration" that this Court has already analyzed and rejected. Further, the Federal Defendants argue that they seek to dismiss Plaintiffs' claims related to one particular streetcar project, the Loyola Avenue/Union Passenger Terminal route ("Loyola/UPT"), for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Thus, they argue Rule 56(d) should not prevent this Court from rendering a determination on that claim. Defendants also contend that the disputed issues in this case are primarily of law, not disputed fact, and therefore no discoverable facts would change the Court's conclusions of law. Finally, Defendants contend that the requested

discovery, in total, is immaterial to the issues the Court must decide as a matter of law.

2. **Federal Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction**

   a. **Federal Defendants' Arguments[12]**

Federal Defendants argue that this Court lacks subject matter jurisdiction to evaluate the merits of Plaintiffs' untimely challenge to certain impact findings published in 2011. Specifically, the Federal Defendants contend that the FTA published its finding from the environmental studies on the Loyola/UPT project in January of 2011. Therefore, Federal Defendants contend that Plaintiffs' challenges regarding the Loyola/UPT project are barred by the statute of limitations and should be dismissed.

Further, as to Plaintiffs' remaining claims, the Federal Defendants argue that there is no genuine issue of material fact that federal funding for streetcar projects does not have any impact, positive or negative, on the City's plan to remove the Monuments. Federal Defendants contend that removing the Monuments has no relation to New Orleans' streetcar projects. For these reasons, Federal Defendants argue that Plaintiffs' remaining claims should be dismissed with prejudice.

---

[12] The RTA joined in the Federal Defendants' motion for summary judgment and adopted Federal Defendants' motion, memorandum, and uncontested facts. R. Doc. 64-1.

**b. Plaintiffs' Response in Opposition**

Plaintiffs first argue that they were not permitted to conduct discovery, and thus the Federal Defendants' motion should be denied. Second, Plaintiffs argue that the Loyola/UPT project is "one part of a multi-phase, multi-year effort to construct a unified comprehensive light rail . . . network in New Orleans." Plaintiffs argue that if this is true, then Plaintiffs' claim is not time barred and this Court has jurisdiction to entertain it. Finally, as to Federal Defendants' motion for summary judgment, Plaintiffs again argue that they should be permitted to conduct discovery that will prove their allegations.

**3. The City's Motion for Summary Judgment**

**a. The City's Arguments**

The City argues that all of Plaintiffs' claims as to the Monuments should be dismissed with prejudice. As to Plaintiffs' DOT Act claim, the City contends that removal of the Monuments bears no relation to a federal transportation project, and therefore removing the Monuments does not violate the DOT Act. As to the Plaintiffs' NHPA claim, the City argues that Plaintiffs cannot establish a nexus between a federally-funded project or undertaking and removal of the Monuments. Accordingly, the City contends that Plaintiffs cannot establish that removing the Monuments violates the NHPA. The City argues that Plaintiffs' VMPRA claim should be dismissed because the VMPRA does not create a

private right of action, but rather is a federal criminal statute. Further, even if the VMPRA created a private right of action, the City contends that Plaintiffs have not and cannot meet their burden of proving that removing the Monuments violates the VMPRA.

As to Plaintiffs' equal protection claim, the City argues that Plaintiffs have failed to state a valid equal protection claim because the Monuments Ordinance and the Monuments' removal apply equally to all classes of citizens, and the City is not forced to remove all offensive statues at once. As to Plaintiffs' due process claims, the City argues that Plaintiffs do not have a constitutionally protected property interest in the Monuments and thus do not have a substantive or procedural due process claim. Further, Plaintiffs participated in many, if not all, of the meetings regarding the City's decision to remove the Monuments.

Finally, the City urges the Court to retain supplemental jurisdiction over Plaintiffs' pendent state-law claims and dismiss them with prejudice. The City contends that Plaintiffs cannot demonstrate that removing the Monuments will infringe upon their right to preserve, foster, and promote their historic, linguistic, and cultural origins. Therefore, the City argues that Plaintiffs' claims under Article XII, § 4 of the Louisiana Constitution should be dismissed. The City further contends that Plaintiffs cannot demonstrate that the City Council was "arbitrary and capricious" in its decision to remove the Monuments. Therefore, the City argues

that this Court should not disrupt the City Council's decision to remove the Monuments. As to the alleged violation of the City's donation policy, the City argues that this claim is moot because Foundation for Louisiana, a non-profit corporation, is donating the funds to remove the Monuments, and the donation is documented by an act of donation. Accordingly, for all of these reasons, the City asks this Court to dismiss Plaintiffs' remaining claims with prejudice.

**b. Plaintiffs' Response in Opposition**

Plaintiffs' response only addresses "the points at which [Plaintiffs believe] the Court erred in accepting arguments proffered by the City of New Orleans and its Mayor, Mitchell J. Landrieu." Plaintiffs response does not address any of the arguments as to why Plaintiffs' federal statutory claims, equal protection claim, Article XII, § 4 of the Louisiana Constitution claim, city donation policy claim, and § 146-611 of the New Orleans City Code claim should be dismissed. In short, Plaintiffs argue that they have a protected property interest in the Monuments under the Louisiana doctrine negotiorum gestio, and that the City does not own the Beauregard Equestrian Monument.

**DISCUSSION**

**1. Plaintiffs are Not Entitled to Discovery and Defendants'**
   **Motions are Granted**

The common refrain throughout Plaintiffs' submissions is that "[t]his Court has not permitted [them] to conduct any discovery." *See* (R. Doc. 67-1; R. Doc. 70; R. Doc. 71.) First, it should be noted that "discovery is *not* mandatory before a Rule 56 summary judgment may be granted." *Dreyer v. Yelverton*, 291 F. App'x 571, 579 (5th Cir. 2008) (emphasis in original). Rather, under Rule 56(d) of the Federal Rules of Civil Procedure, "if a party opposing a motion for summary judgment shows, by way of affidavit or declaration, that for some specific reason it cannot present facts essential to justify its opposition, the Court *may* defer consideration of the summary judgment motion, deny it, allow time for the non-moving party to obtain affidavits or declarations or to take discovery, or issue any other appropriate order." *Doores v. Robert Ress., LLC*, No. 12-1499, 2013 WL 4046266, at *1 (E.D. La. Aug. 8, 2013) (citing Fed. R. Civ. P. 56(d)) (emphasis added). "To justify a continuance, the Rule 56(d) motion must demonstrate (1) why the movant needs additional discovery, and (2) how the additional discovery will likely create a genuine issue of material fact." *Id.* (citing *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 534 (5th Cir. 1999) (alterations omitted). "The party seeking a continuance under Rule 56(d) 'must be able to demonstrate

12

how postponement and additional discovery will allow him to defeat summary judgment; it is not enough to rely on vague assertions that discovery will produce needed, but unspecified, facts.'" *Id.* (citing *Stearns Airport Equip.*, 170 F.3d at 535). Accordingly, the Court shall address whether Plaintiffs have sustained this burden with regard to each of their claims.

### a. Plaintiffs' DOT Act and NHPA Claims

Plaintiffs contend that they need additional discovery to support their DOT Act and NHPA claims. This Court's Order and Reasons denying Plaintiffs' motion for a preliminary injunction summarized Plaintiffs' DOT Act claims as follows:

> Plaintiffs allege that the Federal Defendants facilitated or significantly contributed to the planning, funding, construction, and maintenance of six specific transportation projects involving the streetcar system in New Orleans:
>
> > (a) the Loyola Avenue/Union Passenger Terminal Streetcar Expansion project;
> > (b) a new streetcar line along North Rampart Street, from Canal Street to Elysian Fields Avenue;
> > (c) construction of the Cemeteries Transit Center;
> > (d) proposed construction of a streetcar line along St. Claude Avenue to Poland Avenue;
> > (e) proposed construction of a downtown transportation hub in the Central Business District; and
> > (f) refurbishment and rehabilitation of the historic St. Charles Avenue streetcar line.

(Rec. Doc. 1, at 16.)

Plaintiffs claim that the Federal Defendants violated the [DOT Act] by failing to conduct a section 4(f) analysis of the effect of the totality of the streetcar network in New Orleans on the monuments. Plaintiffs argue that the Secretary of Transportation's section 4(f) reviews failed to assume that the planning, funding, construction, and maintenance of the entire streetcar network in New Orleans was the scope of the "project" under review, and therefore failed to consider the extent to which the entire streetcar network resulted in "use" of section 4(f) resources, including the Lee Monument, Beauregard Monument, and Davis Monument. Next, Plaintiffs argue that the Federal Defendants prepared an inadequate section 4(f) review of the project because they impermissibly divided the project into segments. Plaintiffs argue that by segmenting the project, the Secretary failed to acknowledge that the whole project, particularly maintenance of the St. Charles Avenue streetcar line, the [Loyola/UPT], and the new streetcar line along North Rampart Street, constitutes use of the monuments.

As a result, Plaintiffs claim that the Secretary approved the project without determining whether there is any feasible alternative to removing the monuments and without attempting to minimize the harm caused by the streetcar network's use of the monuments. In sum, Plaintiffs argue that the Secretary's refusal to prevent removal of the [Monuments], which they claim have been adversely affected by the planning, funding, construction, and maintenance of the entire streetcar system in New Orleans, is arbitrary, capricious, an abuse of discretion, and not in accordance with law.

*Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 586 (E.D. La. 2016). Plaintiffs also allege that "the Federal Defendants violated the NHPA by failing to conduct a section 106 review to determine whether the planning, funding, construction, and maintenance of all phases of the streetcar network in New Orleans has the potential to cause adverse effects on historic properties

adjacent to any of the streetcar lines, such as the monuments."
*Id.* at 590.

This Court previously held that Plaintiffs failed to demonstrate a likelihood of success on the merits of their DOT Act and NHPA claims. *Id.* at 590-91. On appeal, Plaintiff-Appellants argued that their DOT Act and NHPA claims were likely to be meritorious because the DOT and FTA "planned, funded, constructed and maintain the numerous streetcar lines in New Orleans as a single, comprehensive network still under construction." Further, Plaintiff-Appellants argued that if the streetcar lines constitute a single, ongoing project or undertaking, then the City cannot damage or destroy the Monuments. Despite these arguments, identical to those raised here, the Fifth Circuit affirmed this Court's previous decision specifically holding that Plaintiffs "failed to present a prima facie case in support of their" DOT Act and NHPA claims. *Chao*, 2017 WL 892492, at *1. Further, the Fifth Circuit made clear that there was "no chance" Plaintiffs would eventually prevail on the merits of these claims. *Id.* at *1 n.1.

The DOT Act aims to prevent federally-funded transportation projects from unnecessarily harming historic sites. *See Save Barton Creek Ass'n v. Fed. Highway Admin.*, 950 F.2d 1129, 1141 (5th Cir. 1992) (noting that section (4) of the DOT Act generally prohibits the use of federal funds to build highways through parks of local significance). Section 4(f) of the DOT Act, now codified

at 49 U.S.C. § 303(c), provides that the Secretary of Transportation may approve a transportation project that uses land from a historic site only if the Secretary determines, first, that there is "no prudent and feasible alternative" to using that land and, second, that the project includes "all possible planning to minimize harm" to the historic site resulting from the use. 49 U.S.C. § 303(c). Section 4(f) does not apply to locally-funded projects. *See Riverfront Garden Dist. Ass'n, Inc. v. City of New Orleans*, 2000 WL 35801851, at *10 (E.D. La. Dec. 11, 2000) ("The locally funded portion [of the project] is not covered by the [DOT Act]."). Further, Section 4(f) only applies if a federally-funded transportation project "uses" a historic site. *Neighborhood Ass'n of the Back Bay, Inc. v. Fed. Transit Admin.*, 463 F.3d 50, 55 (1st Cir. 2006). A "use" of section 4(f) property occurs (1) when "land is permanently incorporated into a transportation facility"; (2) when "there is a temporary occupancy of land that is adverse in terms of the statute's preservation purpose"; or (3) when "there is a constructive use" of the property. 23 C.F.R. § 774.17. A "constructive use" occurs when "the project's proximity impacts are so severe that the protected activities, features, or attributes that qualify the property for protection under Section 4(f) are substantially impaired." *Id.* § 774.15(a). "Substantial impairment occurs only when the protected activities, features, or attributes of the property are substantially diminished." *Id.*

Ultimately, after conducting the appropriate review, the Secretary may make a finding of "de minimis impact" on the historic site if the Secretary determines that the transportation project will have no adverse effect on the historic site or there will be no historic properties affected by the transportation project. 49 U.S.C. § 303(d)(2).

Three of the six transportation projects listed by Plaintiffs—(1) the proposed streetcar line along North Rampart Street; (2) the proposed streetcar line along St. Claude Avenue; and (3) the proposed construction of the downtown transportation hub in the Central Business District—have not been approved, nor federally funded, by either the DOT or the FTA. (R. Doc. 21-1, at 3-4.) Further, the Loyola/UPT project, the Cemeteries Transit Center, and the refurbishment of the St. Charles Avenue streetcar line—all federally funded projects—were subject to section 4(f) reviews, and such reviews determined that each project would have a de minimis impact on historic property.[13] Importantly, Plaintiffs fail to explain how any of the six streetcar projects may harm the Monuments, let alone how the three federally-funded projects "use" the Monuments. Indeed, Plaintiffs acknowledge that the Secretary of Transportation has not sought to displace any of the Monuments with streetcar tracks. Therefore, Plaintiffs fail to identify a

---

[13] R. Doc. 27 at 3-4.

legal nexus between any of the six streetcar projects and the removal of the Monuments.[14] *See Foxx*, 157 F. Supp. 3d at 588-89 (footnote added). Further, even assuming that Plaintiffs were able to establish that the Monuments have become part of the street car network,[15] Plaintiffs fail to demonstrate that the DOT Act would apply to such a project, as they concede that removal of the Monuments will be locally funded. In short, removal of the Monuments is not a federally-funded transportation project. Accordingly, no additional discovery will create a genuine issue of material fact on Plaintiffs' DOT Act claims, and Plaintiffs' DOT Act claims are dismissed with prejudice.[16]

Plaintiffs' NHPA claims fail for similar reasons. Plaintiffs have failed to demonstrate any nexus between a federally-funded project or undertaking and the removal of the Monuments. And, "[u]nless the City's efforts to remove the [Monuments] are either federally funded or federally licensed, Section 106 does not apply." *Foxx*, 2017 WL 914056, at *6 (citing *Sheridan Kalorama*

---

[14] Plaintiffs' "impermissible segmentation" argument also fails. This Court determined that assuming the DOT Act applied in this case "each streetcar project identified by Plaintiffs has independent utility." *Foxx*, 157 F. Supp. 3d at 588 (citing *Riverfront Garden Dist. Ass'n*, 2000 WL 35801851, at *9).

[15] Plaintiffs referenced, in passing, that the civil law doctrine of *custom contra legem* requires acknowledgment that New Orleanians have established the Monuments as part of the streetcar network. R. Doc. 11-2 at 42. However, Plaintiffs have provided no support for this argument, and it appears that the doctrine *custom contra legem* is now prohibited under Louisiana law because "custom may not abrogate legislation." *Foxx*, 157 F. Supp. 3d at 589 n.2.

[16] To the extent that Plaintiffs' challenge to the Loyola/UPT project still remains, this claim is also dismissed as barred by the statute of limitations. *Id.* at 588 n.1.

*Historical Ass'n v. Christopher*, 49 F.3d 750, 755-66 (D.C. Cir. 1995)). Accordingly, no amount of discovery will create a genuine issue of material fact, and Plaintiffs' NHPA claims are dismissed with prejudice.

### b. Plaintiffs' VMPRA Claim

Plaintiffs also seek discovery on their VMPRA claim. Specifically, Plaintiffs seek to determine whether there is any evidence to indicate that the figures atop the Monuments honor members of the United States Military. Plaintiffs' request for discovery as to this issue is immaterial to their success on this claim and therefore denied. As this Court explained in its previous Order and Reasons, the VMPRA "makes it a *criminal offense* for a defendant to willfully injure or destroy any monument on public property commemorating the service of any person in the armed forces of the United States if, in committing the offense, the defendant uses an instrumentality of interstate or foreign commerce, or if the monument is located on property owned by, or under the jurisdiction of, the federal government. The VMPRA imposes a fine, imprisonment of not more than ten years, or both." *Foxx*, 157 F. Supp. 2d at 591 (emphasis added) (citing 18 U.S.C. § 1369). This Court further explained that "[d]ecisions whether to prosecute or file criminal charges are generally within the prosecutor's decision. Private citizens have 'no standing to institute a federal criminal prosecution and no power to enforce

a criminal statute.'" *Id.* (quoting *Gill v. Texas*, 153 F. App'x
261, 262 (5th Cir. 2005)). Further, this Court held that "there is
no basis to believe that the City will willfully injure or destroy
the monuments; the City simply intends to remove and relocate
them." *Id.* Finally, "Plaintiffs have offered no evidence to show
that the monuments are located on federal land. . . ." *Id.*
Accordingly, no amount of discovery will create a genuine issue of
material fact as to this claim, and Plaintiffs' VMPRA claim is
dismissed with prejudice.

### c. Plaintiffs' Equal Protection Claims

Plaintiffs seek discovery as to whether "the City
discriminated against monuments (as it claims) or whether it
discriminated against citizens, as argued by plaintiffs."
Plaintiffs' argument differs slightly from that previously
addressed by this Court. Previously, Plaintiffs argued that the
Monuments Ordinance classified between monuments because the City
has not proposed to remove other monuments that allegedly meet the
criteria for removal pursuant to § 146-611 of the City Code.
However, now, Plaintiffs argue that the City of New Orleans, and
presumably the City Council, treated two classes of individuals—
one consisting of those who called for the removal of the Lee,
Davis, Beauregard, and Liberty Place Monuments and the other
consisting of those who called for removal of the Andrew Jackson

Statue in Jackson Square—differently.[17] Regardless of this slight variation, Plaintiffs' argument fails, and they are not entitled to additional discovery on their equal protection claim.

The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated should be treated alike." *Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016). "[E]qual protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made." *Id.* (quoting *Baxstrom v. Herald*, 383 U.S. 107, 111 (1966)). Plaintiffs' equal protection claims are without merit. First, Plaintiffs have not alleged how these groups of individuals were treated differently. Second, to the extent that Plaintiffs are arguing that these groups were treated differently because the Monuments were chosen to be removed and the Andrew Jackson statue was not, the "classes" are not suspect classes nor subject to intermediate scrutiny. Accordingly, this differential treatment is subject to rational basis review, which requires the City to show that "there is any reasonably conceivable state of facts that could provide a rational basis for the classification" that furthers a legitimate state interest. *See id.* This Court has already determined that there is at least one "reasonably

---

[17] Plaintiffs raised this argument in their original complaint. *See* R. Doc. 1 at 38.

conceivable" basis for deciding not to remove the Andrew Jackson statue while deciding to remove the General Lee, Jefferson Davis, P.G.T. Beauregard, and Liberty Place monuments. *See Monumental Task Comm., Inc. v. Foxx*, No. 15-6905, 2016 WL 5780194, at *5 (E.D. La. Oct. 4, 2016) (dismissing plaintiff Richard Marksbury's class-of-one equal protection claim). Some of the rational reasons why the City and the City Council may have treated the group of individuals who called for the removal of the Andrew Jackson statue differently than those who called for removal of the Monuments are that the "[Andrew Jackson] statue occupies the center frame of New Orleans' most famous, historic, and heavily photograph[ed] public square, is not tainted by the same degree of invidious animus, or that the open legal issues raised by the removal of the Confederate monuments should be resolved before additional monuments are considered for removal." *Id.* at *6. Accordingly, assuming the City treated similarly situated groups of individuals differently by agreeing to remove the Monuments and not the Andrew Jackson statue, there was a rational basis for doing so.

Finally, to the extent that Plaintiffs argue that the City violated their equal protection rights because all similarly situated monuments were not treated alike, this argument also fails. Here, the challenged ordinance does not distinguish between classes of individuals or groups. The monuments ordinance applies to all classes of citizens and it does not have a disparate impact

on members of a suspect class." *Foxx*, 157 F. Supp. 2d at 593.

Further, "the Equal Protection Clause ensures the equal protection

of persons, not monuments." *Id.* The City is not required to "choose

between attacking every aspect of a problem or not attacking the

problem at all." *Id.* (citing *Dandridge v. Williams*, 397 U.S. 471,

486-87 (1970)). Therefore, permitting discovery on Plaintiffs'

equal protection claims would prove futile as it would not serve

to defeat summary judgment. Accordingly, Plaintiffs' equal

protection claims are dismissed with prejudice.

### d. Plaintiffs' Negotiorum Gestio Claim

Plaintiffs seek additional discovery on their negotiorum

gestio claim. Specifically, Plaintiffs argue that "[o]ne key

element determining the extent of plaintiffs' property interest

may be the length of time the City was unaware of Monumental Task

Committee's volunteer efforts." Once again, the Court finds that

additional discovery on this claim would be futile. The Fifth

Circuit's opinion made clear that Plaintiffs failed to present a

prima facie case in support of their negotiorum gestio claim. *Chao*,

2017 WL 892492, at *1 (holding that Plaintiff-Appellants'

negotiorum gestio claim wholly lacked "legal viability or

support"). Further, the Louisiana Fourth Circuit Court of Appeals

recently addressed this precise issue. *See McGraw v. City of New*

*Orleans*, No. 2016-0446, 2017 WL 1164945 (La. App. 4 Cir. Mar. 29,

2017).[18] There, the plaintiff presented essentially identical arguments to those presented in this Court. In upholding the district court's denial of the plaintiff's request for declaratory and injunctive relief, the court held that the plaintiff did not acquire a property interest in the Monuments under the theory of negotiorum gestio. *Id.* at *7. The court held that the "provisions of the Civil Code indicate clearly that the doctrine of negotiorum gestio confers no ownership rights upon the manager who undertakes without authority the administration of another's affairs." *Id.* at *9. "Moreover, even if rights in things could be acquired by negotiorum gestio . . . the monuments at issue are public things held by the City in its public capacity. Therefore, [plaintiff] cannot acquire rights in the monuments." *Id.* Accordingly, as this Court, the Fifth Circuit, and the Louisiana Fourth Circuit Court of Appeals have all previously determined, Plaintiffs have not been vested with a protected property interest in the Monuments under the doctrine of negotiorum gestio. Therefore, it is more than apparent that no amount of discovery will allow Plaintiffs to defeat summary judgment on this claim, and Plaintiffs' negotiorum gestio claim is dismissed with prejudice.

---

[18] Pierre A. McGraw provided Plaintiffs' Rule 56(d) affidavit in this case.

**e. Plaintiffs' Due Process Claims**

Plaintiffs argue that they need additional discovery on the following issues:

> Whether the city conveyed or donated any right, title or interest to any portion of Tivoli Circle to the Lee Monumental Association; Whether erection of the Lee Monument was paid for by private individuals or associations, and, if so, what payments were made; Whether erection of the Lee Monument was paid for by an organization or association chartered by the State of Louisiana, and, if so, whether the State of Louisiana obtained any right, title or interest to the Lee Monument; Whether the City conveyed or donated any right, title or interest to the land on which the Beauregard Equestrian Monument was erected to the Beauregard Monument Association; Whether erection of the Beauregard Equestrian Monument was paid for by private individuals or associations, and if so the amount of the payments; Whether erection of the Beauregard Equestrian Monument was paid for by an organization or association chartered by the State of Louisiana and if so whether the State of Louisiana acquired any right, title or interest in the Beauregard Equestrian Monument; Whether the City conveyed or donated any right, title or interest to the land on which the Jefferson Davis Monument is erected to the Jefferson Davis Monument Association; Whether erection of the Davis Monument was paid for by private individuals or associations; Whether erection of the Davis Monument was paid for by an organization or association chartered by the State of Louisiana, and, if so, whether the State of Louisiana acquired any right, title or interest to the monument; whether the New Orleans City park Improvement Association incorporated on or about August 13, 1891 or its legal successor possesses any right, title or interest in the land on which the Beauregard Equestrian Monument is erected; Whether the New Orleans City Park Improvement Association has indicated that it is attempting to determine ownership of the land on which the Beauregard Equestrian Monument is erected and/or ownership of the Beauregard Equestrian Monument itself.[19]

---
[19] R. Doc. 67-3.

Plaintiffs contend that discovery on these issues will "create genuine issues of fact as to whether Beauregard camp No. 130, the State of Louisiana, the successors to the organizations that raised and contributed money toward erection of the monuments, and the descendants of the individuals who contributed money toward erection of the monuments acquired a protected property interest in the monuments."

First, the only Plaintiffs in this lawsuit are Monumental Task Committee, Inc., Louisiana Landmark Society, the Foundation for Historical Louisiana, Inc., and Beauregard Camp No. 130, Inc. Accordingly, to the extent that Plaintiffs seek additional discovery as to whether other, non-plaintiff individuals or organizations may have a protected interest in the Monuments, that request is denied. Further, Plaintiffs' argument that they, or any other individual or organization, own or possess a property interest in the Monuments or the land upon which they are located is misplaced. The Louisiana Civil Code divides things into three categories: common, public, and private things. La. Civ. Code. art. 448. "Public things are owned by the state or its political subdivision in their capacity as public persons," and "the City is a political subdivision of the State." *McGraw*, 2017 WL 1164945, at *9 (citing La. Civ. Code art. 450). "The very definition of a 'public thing' prohibits a private person from owning a public thing." *Band v. Audubon Park Comm'n*, 2005-0937, p. 5 (La. App. 4

Cir. 7/12/06), 936 So. 2d 841, 845. Thus, "the City may own streets, public squares, and public parks in its public capacity." *McGraw*, 2017 WL 1164945, at *10.

Plaintiffs have repeatedly disclaimed that they own the Monuments,[20] and, as explained above, neither Plaintiffs nor any other individual or organization can acquire a property interest in the Monuments under the Louisiana doctrine of negotiorum gestio. Moreover, Plaintiffs have not produced any evidence that they own the land upon which the Monuments are located. This is likely because the General Robert E. Lee Monument was erected on public property which is owned by the City. *See Foxx*, 157 F. Supp. 3d at 597 (citing *Sarpy v. Municipality No. 2*, 9 La. Ann. 597 (1854)); *cf. Tilton v. New Orleans City R. Co.*, 35 La. Ann. 1062, 1063 (La. 1883) (citing *Sarpy* for the proposition that, at the time, no particular form or ceremony was necessary for dedication of land, and that title to land dedicated to public use inured to the benefit of the donee, i.e., the City of New Orleans). Similarly, Plaintiffs admit that "there is no doubt the Beauregard Equestrian Monument is inside City Park," R. Doc. 139-3 at 3, and there is also "no question that the property of City Park . . . has always belonged to the City of New Orleans." *See City of New Orleans v.*

---

[20] *See* R. Doc. 140, at 3 n.10. Further, the Fifth Circuit specifically held that "although [Plaintiff-Appellants] implied at oral argument that the ownership of the monuments and the land on which they sit may be uncertain . . . [the Fifth Circuit found] no evidence in the record suggesting that any party other than the City has ownership." *Chao*, 2017 WL 892492, at *1.

*State*, 443 So. 2d 562, 570 (La. 1983). Similarly, the Jefferson Davis Monument is located in the neutral ground of Jefferson Davis Parkway, which is also public property. *See* La. Civ. Code art. 450. Finally, *State ex rel. Singelmann v. Morrison* makes clear that the City has authority to remove the Monuments. 57 So. 2d 238, 244 (La. Ct. App. 1952) (holding that a private association could not erect a memorial on public property without consent of the governing authority, that the location, manner, and design of statues is within the discretion of the governing authorities of the City of New Orleans, and that the City of New Orleans can require removal of monuments located on public property). In all, the City owns the property upon which the Monuments are located, and the Monuments at issue "are public things . . . owned by the City in its public capacity, and subsequently dedicated to the public use." *McGraw*, 2017 WL 1164945, at *9. And when the City owns public things in its public capacity "it is not possible for persons to acquire those things." *Id.* (noting that, as public things, the Lee, Beauregard, and Davis monuments are insusceptible of private ownership, are inalienable, imprescriptible, and exempt from seizure). Accordingly, Plaintiffs are not entitled to additional discovery as to whether they or any other individual or organization owns or possess a property interest in the Monuments, because no amount of discovery could prove that private persons own a public thing. Further, even if Plaintiffs proved that they,

or some other individual or association, had a property interest in the Monuments, which they do not, the City has authority to remove the Monuments because they are located on public property. *See Singelmann*, 57 So. 2d at 244.

It follows that Plaintiffs' due process claims must also be dismissed, because Plaintiffs do not have a protected interest in the Monuments. *See Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994) (noting that to state a cause of action under § 1983 for violation of the Due Process Clause, plaintiffs "[m]ust show that they have asserted a recognized 'liberty or property' interest within the purview of the Fourteenth Amendment, and that they were intentionally or recklessly deprived of that interest, even temporarily, under color of state law."); *Foxx*, 157 F. Supp. 3d at 594 ("If there is no denial of life, liberty, or property, then the government is not required to provide due process."). Similarly, Plaintiffs' procedural due process claim is dismissed with prejudice. Procedural due process "refers to the procedures the government must follow before it deprives a person of life, liberty, or property." *Foxx*, 157 F. Supp. 3d at 598. Procedural due process  is "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). However, "a meaningful time" means prior to the deprivation of the liberty or property right at issue. *See Bowlby v. City of Aberdeen*, 681 F.3d 215, 220 (5th Cir. 2012). As

explained above, Plaintiffs do not have a protected property interest in the Monuments to require constitutionally adequate due process. Moreover, "even assuming that Plaintiffs were deprived of a constitutionally-protected property interest, Plaintiffs fail to demonstrate . . . that the process provided by the City was inadequate." *Foxx*, 157 F.3d at 598. Plaintiffs were given a meaningful opportunity to be heard when they participated at public comment meetings prior to the City ultimately deciding to remove the Monuments.[21] Accordingly, Plaintiffs' substantive and procedural due process claims are dismissed with prejudice.

### f. Plaintiffs' § 146-611 Claims

Plaintiffs contend that "City did not comply with the original nuisance statute, 146-611 of the City Code, which required the City [to] solicit input from the Historic District Landmarks Commission (HDLC)." Plaintiffs argue that the HDLC "did not have jurisdiction over the Lee Monument." Further, Plaintiffs seek discovery as to "whether the City was required to solicit comments from the Central Business District Historic District Landmarks Commission (CBD-HDLC) rather than the HDLC panel. . . ." In addition to discovery on these two issues, Plaintiffs seek

---

[21] To the extent that Plaintiffs argue removing the monuments pursuant to § 146-611 of the City Code denies Plaintiffs due process because § 146-611 is unconstitutionally vague, this claim is also dismissed with prejudice. The ordinance does not prohibit any conduct and proscribes no action, rather it merely vests discretion within the City Council to remove monuments, statues, plaques, or other structures from outdoor display on public property. The Court finds that this discretion is not impermissibly broad. *See Foxx*, 157 F. Supp. 3d at 599-600.

additional discovery as to whether the reports submitted to the City Council were accurate. Plaintiffs assert that "[i]f the reports are wrong on the facts, there is no support for the City's legal conclusion the monuments are a public nuisance."

The plain language of § 146-611 of the City Code provides, in relevant part: "In any hearing conducted pursuant to this section, the council shall solicit the recommendations of the city planning commission when required by the City Charter and comments and recommendations of the <u>historic district landmarks commission</u>. . . ." New Orleans, La., Code of Ordinances § 146-611(c) (1995) (emphasis added). The CBD-HDLC is not referenced within § 146-611. The City Code speaks for itself, additional discovery on this issue is denied, and this "claim" is dismissed with prejudice.

Plaintiffs' also seek additional discovery on whether the reports submitted to the City Council are factually accurate. Specifically, Plaintiffs seek discovery as to whether the reports submitted by the Director of Property Management for the City of New Orleans,[22] the New Orleans Police Superintendent,[23] and the City Attorney for the City of New Orleans[24] are accurate. Notably, these reports have been in the record for over a year, yet Plaintiffs have provided no argument, nor produced any evidence, as to how these reports are inaccurate. Assuming the reports are

---

[22] R. Doc. 28-8.
[23] R. Doc. 28-9.
[24] R. Doc. 28-10.

inaccurate, Plaintiffs neglect the fact that the City Council sought recommendations from numerous persons and city organizations, held public hearings, and considered public comments, including Plaintiffs', as to whether the Monuments should be removed. Thus, it is apparent that the three reports at issue were not the sole reason the City Council decided to remove the Monuments. Plaintiffs essentially ask the Court to determine whether every public comment voiced to the City Council in support of, and in opposition to, removing the Monuments was factually accurate. Plaintiffs have provided no authority for such a position, likely because none exists.

The relevant inquiry is whether the City Council acted "capriciously or arbitrarily." *Foxx*, 157 F. Supp. 3d at 601 (quoting *Herman v. City of New Orleans*, 2014-0891, p. 7 (La. App. 4. Cir. 1/21/15); 158 So. 3d 911, 915-16). This Court previously explained how the City Council did not act arbitrarily or capriciously in deciding to remove the Monuments. The Court held that: (1) Plaintiffs have not argued that the City Council was arbitrary and capricious in concluding that the four monuments honor ideologies that are inconsistent with equal protection; (2) Plaintiffs were unable to demonstrate that the City Council was arbitrary and capricious in concluding that the Monuments are sites of criminal activity and possible civil unrest; and (3) Plaintiffs failed to demonstrate that the City Council was arbitrary and

capricious in concluding that the costs of maintaining the Monuments outweigh the benefits of keeping them. *See id.* at 601-602. "Plaintiffs have established only that they disagree with the City's action, not that the City abused its power. This Court, however, 'has nothing to do with the question of the wisdom or good policy of municipal ordinances. If [ordinances] are not satisfying to a majority of the citizens, their recourse is to the ballot—not the courts.'" *Id.* at 603 (quoting *Palermo Land Co. v. Planning Comm'n of Calcasieu Par.*, 561 So. 2d 482, 491 (La. 1990)). Accordingly, additional discovery will not allow Plaintiffs to survive summary judgment on this claim, and Plaintiffs' claims that the City did not comply with § 146-611 of the City Code are dismissed with prejudice.

### g. Plaintiffs' Claims under Article 12, § 4 of the Louisiana Constitution

Plaintiffs argue that removing the Monuments violates their rights under Article XII, § 4 of the Louisiana Constitution. According to Plaintiffs, the Monuments were erected to preserve, foster, and promote the historic and cultural origins of the citizens of New Orleans and the residents of Louisiana. Plaintiffs contend that they need additional discovery on "the legislative history of Article 12, § 4 of the Louisiana Constitution."

Plaintiffs' request is not a request for additional discovery. Rather, the legislative history of a constitutional

provision is legal research. Nothing prevented Plaintiffs from conducting legal research on the legislative history or reported cases on Article XII, § 4 of the Louisiana Constitution. Therefore, additional discovery on the legislative history of Article XII, § 4 of the Louisiana Constitution is denied as it would not serve to defeat summary judgment on this claim.

Moreover, Plaintiffs incorrectly contend that this Court did not hear Plaintiffs' state law claim arising under Article XII, § 4 of the Louisiana Constitution. This Court explicitly exercised supplemental jurisdiction on Plaintiffs' state law claims, *Foxx*, 157 F. Supp. 3d at 600, and held that "Plaintiffs [failed] to demonstrate that the removal of the monuments will infringe upon their right to preserve, foster, and promote their historic, linguistic, and cultural origins." *Id.* at 601. As the Louisiana Fourth Circuit Court of Appeal noted, "the only reported decision interpreting [Article XII, § 4 of the Louisiana Constitution]" is this Court's previous Order and Reasons denying Plaintiffs' request for an injunction. *McGraw*, 2017 WL 1164945, at *9. Plaintiffs have not provided any additional arguments, cited to any additional cases or legal sources, or produced any additional evidence to persuade this Court that it was incorrect in holding that removal of the Monuments will not infringe upon Plaintiffs' rights under Article XII, § 4 of the Louisiana Constitution. The City has a right to "speak for itself" and removal of the Monuments

is a form of such government speech. *Foxx*, 157 F. Supp. 3d at 600–601. Accordingly, Plaintiffs' claims under Article XII, § 4 of the Louisiana Constitution are dismissed with prejudice.

### h. Plaintiffs' City Donation Policy Claims

Finally, Plaintiffs seek discovery on the "'money trail' between the anonymous donor or donors allegedly paying for removal of the monuments and the coffers of the City of New Orleans." Plaintiffs seek discovery on whether "any of the funds channeled to the City of New Orleans by Foundation for Louisiana are federal in origin, and if so the identity of the federal programs from which the funds originated." Plaintiffs argue that "the City's naked effort to hide the source of funds it will use to pay for removal of the monuments" violates the City's policy on donations, which in turn, violates Plaintiffs' right to due process of law.

Plaintiffs are not entitled to additional discovery on this claim. First, Plaintiffs do not have a protected right in the Monuments. Accordingly, removing the Monuments does not violate Plaintiffs' right to due process. Second, Plaintiffs' city donation policy claim is moot. *Id.* at 601. "The City has explained that funds for the removal are being donated by Foundation for Louisiana, a non-profit corporation. The donation is documented in writing by an Act of Donation committing to provide up to $175,000 to cover costs associated with removal of the four monuments. Thus, the donation complies with the City's policy. Furthermore, even if

35

there had been no writing, Policy Memorandum No. 125 provides that any of its provisions may be waived with approval of the City's Chief Administrative Officer." *Id.; see also* (R. Doc. 35-1 at 110). Accordingly, the evidence before the Court proves that the City is not attempting to hide the source of funds it will use to remove the Monuments. No discovery is permitted on this issue, and Plaintiffs' claims as to the City's donation policy are dismissed as moot.

### 2. Summary

This lawsuit and the events which preceded it displayed the breadth of our democracy. Constituents urged their representative officials to remove monuments which they deemed offensive. Citizens who supported the display of these figures objected with the same fervor. The proper procedural mechanisms were then employed to determine whether removal of the monuments was warranted and authorized, which resulted in the decision to uproot these figures from their current location. Objectors then petitioned the judiciary and challenged the actions of their government. This Court was then tasked solely with determining whether the government had authority to remove the monuments in question, or whether their removal violated Plaintiffs' rights. This Court's role has never been, and will never be, to pass judgment, in approval or protest, on the wisdom of the government's actions. In the end, for the reasons explained in this decision

and others, this Court has determined that the government's actions are authorized and do not violate Plaintiffs' rights. Consequently, Plaintiffs' claims as to the General Robert E. Lee Monument, the P.G.T. Beauregard Monument, and the Jefferson Davis Monument must be dismissed with prejudice.

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that all of Plaintiffs' remaining claims as to the General Robert E. Lee Monument, the P.G.T. Beauregard Monument, and the Jefferson Davis Monument are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs' *Motion to Continue* **(R. Doc. 67)** is **DENIED**.

**IT IS FURTHER ORDERED** that the City's *Motion for Summary Judgment* **(R. Doc. 63)** is **GRANTED**.

**IT IS FURTHER ORDERED that** the RTA's *Motion for Summary Judgment* **(R. Doc. 64)** is **GRANTED**.

**IT IS FURTHER ORDERED that** the Federal Defendants' *Motion to Dismiss for Lack of Subject Matter Jurisdiction and Summary Judgment* **(R. Doc. 62)** is **GRANTED.**

New Orleans, Louisiana this 24th day of April, 2017.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE